IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SCOTT McREAKEN and ANTHONY TOLLIVER,<br><br>    Plaintiff,<br><br>v.<br><br>NEIL KELLERMAN, LUKE HICKS, KEITH HUBLER, BRADLEY DEDECKER and DEREK CLELAND,<br><br>    Defendants. | Case No. 21-CV-00584-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Plaintiffs Scott McReaken and Anthony Toliver, both inmates in the Illinois Department of Corrections housed at Pinckneyville Correctional Center ("Pinckneyville") during the relevant times, filed this action under 42 U.S.C. § 1983 for alleged violations of their constitutional rights, occurring in separate incidents during their stay at Pinckneyville. (Docs. 1, 49). McReaken and Toliver are proceeding on the following claims:

**Count 1:** Eighth Amendment excessive force claim against Kellerman, Hicks, Hubler, Dedecker, and Cleland for assaulting McReaken and Toliver in the shower in separate incidents.

**Count 2:** Eighth Amendment claim against Kellerman, Hicks, Hubler, Dedecker, and Cleland for denial of medical care to McReaken and Toliver after the assaults.

**Count 3:** Eighth Amendment violation against Kellerman, Hicks, Hubler, Dedecker, and Cleland for failure to intervene on behalf of McReaken and Toliver while the assaults were occurring.

(Doc. 1).

This matter comes before the Court for consideration of a Motion for Partial Summary Judgment and Memoranda filed in support by Defendants Neil Kellerman, Luke Hicks, Keith Hubler, Bradley Dedecker, and Derek Cleland. (Docs. 45, 46, 52). As to Counts 1 and 3, only Defendant Cleland moves for summary judgment against Plaintiff Toliver, and all Defendants move for summary judgment against Plaintiff McReaken. As to Counts 2 and 4, all Defendants move for summary judgment against both Plaintiffs Toliver and McReaken. For the reasons set forth below, the Court grants the motion in part and denies the motion in part.

## PRELIMINARY ISSUES

Before getting to the facts of the case, the Court must first address preliminary matters.

First, McReaken and Toliver argue that the Motion for Partial Summary Judgment should be denied outright as a sanction against Defendants pursuant to Federal Rule of Civil Procedure 56(h), 28 U.S.C. §1927, and the Court's inherent authority. (Doc. 49, pp. 31-32). Plaintiffs appear to be contending that the Motion for Partial Summary Judgment concerning McReaken's Eighth Amendment claims is frivolous because Defendants failed to address McReaken's testimony that he was punched while handcuffed and lying in his bed.

Plaintiffs have not demonstrated that Defendants or Defense Counsel have acted in a manner warranting sanctions. They do not point to an affidavit or

declaration submitted in bad faith (Rule 56(h)); nor have they established that Defendants' filing of the motion for summary judgment was done both unreasonably *and* vexatiously (28 U.S.C. § 1927). *See Kotsilieris v. Chalmers,* 966 F. 2d 1181, 1184 (7th Cir. 1992) (Section 1927 does not provide that "*any* unreasonable conduct is sanctionable"). While the Court, as discussed more fully below, will deny the Motion as to the Eighth Amendment excessive force claim brought by McReaken, Plaintiffs have not provided sufficient argument or evidence establishing that the arguments made in the Motion for Partial Summary Judgment concerning the excessive force claim were put forth in bad faith or were not warranted by existing law. *See Palmer v. McErlean,* No. 89 C 8511, 1991 WL 203763, at *3 (N.D. Ill. Sept. 30, 1991) (denying the motion for sanctions and noting that "the defendants had a good faith argument that plaintiff's evidence of excessive force was merely colorable and not significantly probative so as to avoid summary judgment"). Accordingly, the request for sanctions is **DENIED.**

Second, the Court must address Counts 1 and 3, as brought by Plaintiff Toliver against Defendant Cleland. Defendants move for summary judgment as to Toliver's claims of excessive force and failure to intervene against Cleland only. Defendants argue that it is undisputed that Cleland was not present during the cell extraction on November 8, 2019, or otherwise involved in the incident with Toliver and that Toliver admits that Cleland did nothing to him. (Doc. 46, p. 10). Plaintiffs oppose the motion not on the merits, but on the grounds that Toliver did not bring claims of excessive force against Cleland in the first place. (Doc. 49, p. 18, 31).

The Court agrees with Defendants, that from the basic reading of Counts 1 and 3 in the Complaint, it appears that both Plaintiffs are proceeding with Eighth Amendment claims against all Defendants. (*See* Doc. 1, p. 5). There is no indication that Toliver intended to exclude Cleland from Counts 1 and 3. Because Toliver admits that Cleland was not involved in the excessive force incident and that Cleland "did nothing to him," the Motion for Partial Summary Judgment as to Counts 1 and 3 brought by Toliver against Cleland is **GRANTED**. (See Doc. 46-2, p. 73-74; 49, p. 18-19).

And finally, Plaintiffs seek to withdraw their retaliation claim as alleged in Count 4. In response to the motion for summary judgment, Plaintiffs respond that they withdraw their retaliation claim, but they do not cite to any particular rule giving them the ability to simply "withdraw" a claim at this stage in the case. (Doc. 49, p. 31). Generally, an attempt to voluntarily dismiss only certain counts of a multi-count complaint is treated as a motion to amend under Federal Rule of Civil Procedure 15. *Bibbs v. Newman*, 997 F. Supp. 1174, 1177 (S.D. Ind. 1998) (citations omitted). Additionally, when "a plaintiff withdraws a claim in response to summary judgment, courts within this Circuit typically dismiss these claims with prejudice because 'it would not be fair at this point to leave open even a remote possibility that defendants might face this claim in some other forum.'" *Miller v. Madison Cnty. Bd. of Comm'rs,* No. 21-cv-02609-JMS-MJD, 2023 WL 2837867, at *13 n. 6 (S.D. Ind. Apr. 7, 2023) (quoting *Bibbs*, 997 F. Supp. at 1177). See also *DuBose v. McHugh*, No. 12-cv-789-MJR*DGW, 2014 WL 10175999, at *2 (S.D. Ill. Jan. 10, 2014); *Swartz v.*

*Wabash Nat'l Corp.*, 674 F. Supp. 2d 1051, 1057 (N.D. Ind. 2009). In keeping with this precedent, Plaintiffs' Complaint is deemed amended to remove Count 4, which is **DISMISSED with prejudice.**

### RELEVANT FACTS

On November 5, 2019, McReaken was observed with a sheet tied around his neck and stated that he wanted to kill himself. (Doc. 49-1). As a result, McReaken was put on crisis watch. (*Id*). The morning of November 7, 2019, McReaken spoke to his mental health counselor during the daily checkup he received while on crisis watch. (Doc. 46-1, p. 23-24). For the checkup, McReaken changed out of his smock into a regular prison jumpsuit, was handcuffed, and taken to his appointment. (*Id*. at p. 25). Kellerman, a corrections officer at Pinckneyville, retrieved McReaken from the meeting with the mental health counselor and placed McReaken in a secured shower to change clothes. (*Id*. at p. 27).

While in the secured shower, McReaken refused to change back into his smock and refused to put on handcuffs. (Doc. 46-1, p. 27). McReaken claims and Defendants deny that he told Kellerman that he was refusing because he had not finished speaking with his mental health counselor. *(*Doc. 46-1, p. 27; Doc. 46-3, p. 19, 21). McReaken then spit into the open chuckhole, hitting Kellerman who was on the other side. (Doc. 46-1, p. 27, 31*;* Doc. 46-3, p. 23). Kellerman then locked McReaken in the secure shower and called for backup. (Doc. 46-1, p. 31-32; Doc. 46-10).

Hicks, Dedecker, Cleland, and Hubler, all corrections personnel at Pinckneyville as well, arrived at the shower and asked McReaken to submit to

handcuffing, but McReaken refused. (Doc. 46-1, p. 27). Cleland gave McReaken two orders to submit to handcuffing, and McReaken refused again. (*Id.* at p. 33). McReaken alleges and Defendants deny that upon entering the shower Cleland smashed his head into the wall and placed him in a headlock while the two officers in the cell punched, kicked, and kneed him. (*Id.* at p. 34). Defendants assert and McReaken denies that when the officers entered the cell, McReaken resisted handcuffing by keeping his arms in front of his body. (Doc. 46-6, p. 31). McReaken alleges that he repeatedly stated that he was not resisting. (Doc. 46-1, p. 34). After handcuffing him, Cleland and Hubler escorted McReaken back to his cell. (Doc. 46-6, p. 32). McReaken alleges and Defendants deny that when they arrived at his cell, officers shoved him face-first into his bed. (Doc. 46-1, p. 41). McReaken claims and Defendants deny that Hicks and Kellerman then punched him three or four times. (*Id.*).

During his interaction with Defendants, McReaken claims he heard a pop in his ear. (Doc. 46-1, p. 34). After the interaction, McReaken alleges that he had difficulty hearing out of his right ear, his neck was sore, and he had a bruise on his cheek. (*Id.* at p. 43).[1] McReaken does not recall asking any of the Defendants for medical care after the shower incident, nor does he recall asking any of the staff on duty during the first shift after he was placed back in his cell. (*Id.* at p. 44). Instead, McReaken states that he asked the second shift for medical attention and was seen soon after by an RN to whom he stated his complaints. (*Id.*) Before seeing the RN, he

---

[1] He had a preexisting condition that significantly affected his hearing out of his right ear prior to his interaction with Defendants. (Doc. 46-1, p. 44-45; Doc. 49 p. 15).

Page 6 of 18

gave a statement for an incident report in which he alleged that he had been kicked and punched by officers and noted pain in his ear and jaw. (Doc. 49-5). He maintains that he complained to the RN about the sound in his ear and his sore neck. (Doc. 46-1, p. 43). The RN noted no injuries to McReaken upon assessment. (Doc. 46-8). A few hours later, McReaken was seen again by an LPN who noted no symptoms of distress. (Doc. 46-9).

On October 19, 2019, another inmate, Toliver, was placed on crisis watch during which he attempted suicide. (Doc. 46-2, p. 18-20). On November 7, 2019, after the stated incident with McReaken, Toliver alleges that he was assaulted by Dedecker, Hicks, Hubler, and Kellerman after taking a shower in the secured shower. (Docs. 1, p. 4; Doc. 46-2, p. 31-36). After being removed from the shower, Toliver was placed back in his cell. (Doc. 49, p. 7). Toliver did not ask Cleland, Dedecker, Hicks, Hubler, or Kellerman to be seen by the medical staff, nor did he ask any of the other staff on the first shift for medical assistance. (Doc. 46-2; Doc. 46-5; Doc. 49). Toliver claims that he waited until the second shift because he did not want to ask the corrections officers who had been involved in the incident for care. (Doc. 46-2, p. 53-54; Doc. 49, p. 7). After the second shift arrived at approximately 3:00 PM, Toliver asked to be seen by medical, and was seen soon after by both mental health and by health care services. (Doc. 49-8; Doc. 49-10). Roughly two hours later, Toliver was examined by a registered nurse who noted swelling to Toliver's left wrist and pinky as well as some abrasions to his lip and knees. (Doc. 46-11; Doc. 46-12). Upon consultation, Dr. Myers, a doctor on staff, recommended Toliver to the Pinckneyville

Community Hospital for further assessment. (*Id.*). At approximately 7:00 PM, Toliver was seen by the hospital physician Dr. Beusse, and had X-rays taken indicating a mild nasal fracture, a wrist fracture, and pinky fracture. (Doc. 49-10; Doc. 49-11). Toliver was given an ace bandage for his arm and was prescribed medication for any residual pain. (*Id.*). Later that evening, Toliver was released back to the Health Care Unit where he was treated by the RN as prescribed by Dr. Beusse. (Doc. 49-10; Doc. 49-11; Doc. 49-12).

## LEGAL STANDARD

Summary judgment is the moment in a lawsuit where a party lays its proverbial cards on the table, showing what evidence it possesses to convince a trier of fact to agree with its version of events. *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)). Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). That "burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere conclusory allegations and offer specific facts showing that

there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Celotex*, 477 U.S. at 232-24.

In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath v. Hayes Wheels Int'l-Indiana, Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). While the Court must view the evidence and draw all reasonable inferences in favor of the opposing party, "[i]nferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions, or rumors[.]" *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *Rand v. CF Industries, Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Henning v. O'Leary,* 477 F.3d 492, 496 (7th Cir. 2007).

## DISCUSSION

### I. McReaken's Excessive Force Claim

The Eighth Amendment does not forbid every use of force against a prisoner; it only forbids the wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 319-320

(1986). Use of force is constitutional if it is part of a good-faith effort to restore discipline. *Id.* In fact, once a prison official is accused of using excessive physical force in violation of the cruel and unusual punishment clause, the inquiry turns to whether the force was applied in a good faith effort to maintain or restore discipline, or whether it was applied maliciously and sadistically to cause harm. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Whitley*, 475 U.S. at 327).

"[W]hether a defendant applied force in good faith or for purposes of causing harm," depends on several factors, "including the need for force, the amount of force used, the threat reasonably perceived by the officer, efforts made to temper the severity of force, and the extent of the injury caused by the force." *Lewis v. Downey*, 581 F.3d 467, 476-77 (7th Cir. 2009) (citing *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004); *Whitley*, 475 U.S. at 321). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson v. McMillian*, 503 U.S. 1, 9–10, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992) (*quoting Whitley*, 475 U.S., at 327, 106 S. Ct., at 1088). Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010). "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.*

If the facts are as McReaken alleges, and there is no definitive evidence to suggest that there is not a question of fact, then a reasonable jury may find that

Cleland, Dedecker, Hicks, Hubler, and Kellerman used force against him maliciously and sadistically to cause harm. McReaken alleges that these corrections officers punched and kicked him while he was not resisting in any way. Unless an inmate is actively resisting officers, it is difficult to explain how kicking and punching the inmate is necessary or even useful in order to restrain him. McReaken also claims that he was punched by Hicks and Kellerman while handcuffed on his bed. It is likely not reasonable for officers to perceive a significant threat when an inmate is lying handcuffed on his bed as McReaken was when he alleges that Hicks and Kellerman punched him.

Cleland, Dedecker, Hicks, Hubler, and Kellerman argue that they are entitled to summary judgment because McReaken's injuries were minimal, and the Court should infer that they used reasonable *de minimis* force. However, there exists a genuine dispute of material fact as to the extent of McReaken's injuries. (Doc. 46-1, p. 43; 46-8). Additionally, while the extent of an inmate's injuries is one factor in the determination of whether force was applied in good faith or for the purposes of causing harm, it is not dispositive. Punching and kicking an inmate who is not fighting back appears to constitute a "gratuitous beating" and McReaken does not lose his ability to pursue an excessive force claim merely because he escaped without serious injury. *Wilkins,* 559 U.S. at 38. Simply put, there remains a question of fact as to whether excessive force was used against McReaken. *See Id.*

Cleland, Dedecker, Hicks, Hubler, and Kellerman additionally assert that they are entitled to the defense of Qualified Immunity. (Doc. 46, pp. 19-20). The inquiry as

to whether officers are entitled to qualified immunity for the use of excessive force is distinct from the inquiry on the merits of the excessive force claim. *Saucier v. Katz*, 533 U.S. 194 (2001).

"Qualified immunity is an affirmative defense, but once it is raised the burden shifts to the plaintiff to defeat it." *Holleman v. Zatecky*, 951 F.3d 873, 877 (7th Cir. 2020) (citing *Sparing v. Vill. of Olympia Fields*, 266 F.3d 684, 688 (7th Cir. 2001)). "To overcome qualified immunity, the facts viewed in the light most favorable to [the plaintiff] must 'show that the defendant[s] violated a constitutional right' and that 'the right was clearly established at [that] time.'" *Id.* (quoting *Estate of Clark v. Walker*, 865 F.3d 544, 550 (7th Cir. 2017)).

The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation. *See Hope v. Pelzer*, 536 U.S. 730, 736 (2002). In this case, if McReaken's allegations are true, which is presumed at the summary judgment stage, then the Court must determine if the right to be free from cruel and unusual punishment was clearly established. *Saucier*, 533 U.S. 194, 201 (2001). Qualified immunity applies unless the official's conduct violated such a right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Thus, we can dismiss the case on summary judgment only if we find that the right that Cleland, Dedecker, Hicks, Hubler, and Kellerman allegedly violated was not clearly established at the time of the purported misconduct. *See Juriss v. McGowan*, 957 F.2d 345, 350 (7th Cir. 1992). To the contrary, the right to be free from cruel and unusual punishment is guaranteed under the Eighth Amendment. A gratuitous beating by

prison guards is cruel and unusual punishment as established by Supreme Court precedent. *See Wilkins*, 559 U.S. 38. As a result, summary judgment is inappropriate at this time.

## II. McReaken's Failure to Intervene Claim[2]

Cleland, Dedecker, Hicks, Hubler, and Kellerman have also moved for summary judgment on McReaken's failure to intervene claim. Their sole argument is that McReaken cannot meet the elements for a failure to protect claim because he cannot demonstrate that excessive force was used against him. (Doc. 46, p. 13). It is true that, "by definition, if there was no excessive force then there can be no failure to intervene." *Abdullahi v. City of Madison*, 423 F.3d 763, 767–68 (7th Cir. 2005). However, as discussed above, Cleland, Dedecker, Hicks, Hubler, and Kellerman have not disproven excessive force by summary judgment standards, so they are not entitled to summary judgment on his failure to intervene claim on this theory either. *See Anderson*, 477 U.S. at 255.

## III. McReaken and Tolivers' Denial of Medical Care Claims

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment."

---

[2] Plaintiffs bring an Eighth Amendment claim for failure to intervene against all Defendants. (Doc. 1, p. 6). Defendants mistakenly characterize the claim in their Motion for Partial Summary Judgment as "failure to protect." Defendants argue that due to the Section 1915A merit review text order they were confused by what claims on which Plaintiffs were permitted to proceed. (*See* Doc. 52, p. 17; Doc. 6). This argument is not well taken. In the merit review order, the Court briefly summarized the Complaint as containing allegations of excessive force and denial of medical care and then proceeded to dismiss the Illinois Department of Corrections as a defendant. The Court did not modify or recharacterize the counts as stated by Plaintiffs in the Complaint. Regardless of Defendants' confusion and how they have labeled Count 3, the motion for summary judgment is denied as to the failure to intervene claim, as there remains disputed issues of material fact involving the events of November 7, 2019.

*Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted). It is well established that a prisoner may bring a claim for deliberate indifference under § 1983. *See, e.g., id*. at 105. However, "[t]he Constitution is not a charter of protection for hypochondriacs." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). The Eighth Amendment prohibits only cruel and unusual "punishments" not "conditions." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Consequently, claims alleging a denial of medical care require that plaintiffs meet a two-part test: (1) They must demonstrate that their medical conditions were objectively, sufficiently serious, and (2) that defendants knew of and disregarded an excessive risk to their health. *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

To be objectively, sufficiently serious, a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. *See Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting *Farmer*, 511 U.S. 825, 834 (1994). To qualify, plaintiffs must show that they were either suffering from a condition that had been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *See King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (internal citations omitted); *see also Gutierrez,* 111 F.3d 1364 at 1369.

Toliver alleges that he was assaulted by Dedecker, Hicks, Hubler, and Kellerman after taking a shower in the secured shower. (Doc. 1, p. 4; 46-2, Doc. p. 31-36). After being removed from the shower by the corrections officers, Tolliver was placed back in his cell. (Doc. 49, p. 7). Toliver did not ask Cleland, Dedecker, Hicks,

Hubler, or Kellerman to be seen by the medical staff, nor did he ask any of the other staff on the first shift for medical assistance. (Doc. 46-2; Doc. 46-5, 49). Toliver claims that he waited until the second shift because he did not want to ask the corrections officers who had been involved in the incident for care. (Doc. 46-2, p. 53-54; Doc. 49, p. 7).

After the second shift arrived at approximately 3:00 PM, Toliver asked to be seen by medical, and was seen soon after by both mental health and by health care services. (Doc. 49-8; Doc. 49-10). Around 4:50 PM, Toliver was examined by a registered nurse who noted swelling to Toliver's left wrist and pinky as well as some abrasions to his lip and knees. (Doc. 46-11; Doc. 46-12). Upon consultation, Dr. Myers, a doctor on staff, recommended Tolliver to the Pinckneyville Community Hospital for further assessment. (*Id.*). At approximately 7:00 PM, Toliver was seen by the hospital physician Dr. Beusse, and had X-rays taken indicating a mild nasal fracture, a wrist fracture, and pinky fracture. (Doc. 49-10; Doc. 49-11). Toliver was given an ace bandage for his arm and was prescribed medication for any residual pain. (*Id.*). At about 9:40 PM, Toliver was released back to the Health Care Unit where he was treated by the RN. (Doc. 49-10; Doc. 49-11; Doc. 49-12).

Likewise, McReaken does not recall asking Cleland, Dedecker, Hicks, Hubler, or Kellerman for medical care after the shower incident, nor does he recall asking any of the staff on duty during the first shift after he was placed back in his cell. (Doc. 46-1, p. 44). Instead, McReaken states that he asked the second shift for medical

attention and was seen soon after by an RN to whom he stated his complaints. (Doc. 46-1, p. 44).

Even assuming that McReaken and Toliver satisfied their burden to offer specific facts that create a question of fact, a fatal gap in their case is still present. McReaken and Toliver have taken the liberty of couching their claims as a "denial" of medical care by Cleland, Dedecker, Hicks, Hubler, or Kellerman. (Docs. 1, p. 5-6; 49, p. 24). However, in truth, McReaken and Toliver are merely alleging a *delay* of medical care, given that they were seen soon after they requested it. (Docs. 46-1, p. 43; 49, p. 5, 15, 18; 49-5; 49-8; 49-10; 49-11). "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (citing *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir. 1995)); see also *Walker v. Benjamin*, 293 F.3d 1030, 1038 (7th Cir. 2002). Thus, as the Seventh Circuit has elaborated: "[i]n cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the *delay* . . . caused some degree of harm." *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007) (emphasis added).

Based on the facts presented by McReaken, he did not complain of psychological injuries when he was examined upon request. (Doc. 46-1, p. 43-44, 45). Nor did he present any evidence, beyond his allegations, that he suffered actual psychological or physical harm as a result of the delay in treatment. Toliver also did

not request to be seen by mental health following his interaction with Dedecker, Hicks, Hubler, and Kellerman, and when he was later seen, he complained only about physical injuries. (Doc. 46-2, p. 52-54, 62). He did not present any evidence, beyond his allegations, that he suffered actual psychological or physical harm as a result of the delay in treatment.

Given that McReaken and Toliver did not put forth any facts that their relatively short delays in treatment contributed to any actual harm, mental or physical, they have not satisfied their burden of proof. *See Walker,* 293 F.3d 1030, 1038 (7th Cir. 2002); *see also Langston v. Peters*, 100 F.3d 1235, 1241 (7th Cir. 1996). Cleland, Dedecker, Hicks, Hubler, and Kellerman are therefore entitled to summary judgment on this count. *See Celotex*, 477 U.S. at 323.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS in part** and **DENIES in part** the Motion for Summary Judgment:

- I. With respect to Count I, the Court **DENIES** summary judgment on McReaken's excessive force claims. The Court **GRANTS** summary judgment on Toliver's excessive force claim against Cleland.

- II. With respect to Count II, the Court **GRANTS** summary judgment on all denial of medical care claims. These claims are **DISMISSED with prejudice**.

- III. With respect to Count III, the court **DENIES** summary judgment on all failure to intervene claims brought by McReaken. The Court **GRANTS** summary judgment on Toliver's failure to intervene claim against Cleland.

- IV. With respect to Count IV, these claims are **DISMISSED with prejudice**.

Accordingly, Plaintiffs may proceed on the following claims:

**Count I**: McReaken's excessive force claims against Cleland, Dedecker, Hicks, Hubler, and Kellerman; Toliver's excessive force claims against Dedecker, Hicks, Hubler, and Kellerman.

**Count III**: McReaken's failure to intervene claims against Cleland, Dedecker, Hicks, Hubler, and Kellerman; Toliver's failure to intervene claims against Dedecker, Hicks, Hubler, and Kellerman.

A status conference will be set at a later date to set firm dates for a final pretrial conference and jury trial. In the meantime, the parties are encouraged to discuss whether a settlement conference would be beneficial and, if so, request a referral to a magistrate judge for that purpose.

**IT IS SO ORDERED.**

**DATED:  September 26, 2024**

> s/ *Stephen P. McGlynn*
> **STEPHEN P. McGLYNN**
> **U.S. District Judge**